FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   OCT 30 2014   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DR. ELEANOR MACK,

                                Plaintiff,

     -against-

PARKER JEWISH INSTITUTE FOR HEALTH
CARE AND REHABILITATION, CHARLES
SEIDE, GEORGIENE KENNY and NORA
KUSTIN,

                                Defendants.
-------------------------------------------------------------X

MEMORANDUM AND ORDER

CV 14-1299

(Wexler, J.)

APPEARANCES:

    BRILL LEGAL GROUP, P.C.
    BY:   Peter E. Brill, Esq.
    Attorneys for Plaintiff
    150 Motor Parkway, Suite 401
    Hauppauge, New York 11788

    HOGAN LVELLS US LLP
    BY:   Robert B. Buehler, Esq.
           Nathanial S. Boyer, Esq.
    Attorneys for Defendants
    875 Third Avenue
    New York, New York 10022

    KAUFMAN BORGEEST & RYAN LLP
    BY:   Michael P. Mezzacappa, Esq.
           Stephanie B. Gitnik, Esq.
           Matthew B. Spergel, Esq.
    Attorneys for Defendants
    200 Summit Lake Drive
    Valhalla, New York 10595

WEXLER, District Judge:

Before the Court is Defendants' motion to dismiss Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Plaintiff opposes Defendants' motion. For the following reasons, Defendants' motion is granted in part and denied in part.

## BACKGROUND

The Plaintiff, Dr. Eleanor Mack ("Mack"), is a Doctor of Pharmacy, licensed by the State of New York, with more than twenty-five years of experience as a pharmacist. (Compl. ¶ 1, 8.) Defendant Parker Jewish Institute for Health Care and Rehabilitation ("Parker") is a New York State not-for-profit corporation located in New Hyde Park, New York, that provides rehabilitation and nursing home services. (Compl. ¶ 2.) Plaintiff was employed by Parker as a pharmacist from November 28, 2011 to March 30, 2012. (Compl. ¶ 8.)

While employed at Parker, Plaintiff's direct supervisor was Defendant Charles Seide ("Seide"), Parker's Director of Pharmacy. (Compl. ¶ 3.) Seide's supervisor was Defendant Georgiene Kenny ("Kenny"), a Vice President at Parker. (Compl. ¶ 4.) Defendant Nora Kustin ("Kustin") was employed as a pharmacist at Parker and was Plaintiff's co-worker. (Compl. ¶ 5.)

In her Complaint, Plaintiff alleges that while employed at Parker, she became aware of a conspiracy to commit Medicare prescription billing fraud by Defendants Seide, Kenny and Kustin. (Compl. ¶ 9.) The majority of Parker's patients receive Medicare coverage for all or part of their care, including prescription drug coverage. (Compl. ¶ 11.) Plaintiff alleges that for these patients, it was understood and agreed by all Defendants, including Parker, that, upon Seide's

-2-

authorization, both Seide and Kustin would personally override Parker's internal controls to renew prescription drugs for patients prior to the date that such prescriptions could lawfully be renewed. (Compl. ¶¶ 12-13.) Once the new prescriptions were authorized, Parker staff would deliver the new prescriptions and remove the old, unused prescription drugs from the patients' rooms. (Compl. ¶ 14.) The old, unused prescription drugs would then be placed in a storage room in the basement of the Parker facility, known as the "return room," allegedly to be canceled in Parker's system at a later date or returned to stock. (Compl. ¶ 15.) However, these returned prescription drugs and their corresponding prescriptions were rarely, if ever, canceled or returned to stock. (Compl. ¶ 16.) As a result, Parker would benefit from double billing Medicare for the same drugs and patients. (Compl. ¶ 16.)

When Plaintiff discovered the foregoing practices, she approached Seide and Kustin. (Compl. ¶ 18.) Plaintiff was repeatedly advised by Seide that the drugs would be canceled in the system at a later date, but such cancellations never occurred. (Compl. ¶ 18.) On one occasion, Plaintiff reported her suspicions to Seide and, later that same day, to Kustin. (Compl. ¶ 19.) Plaintiff alleges that later that evening, Seide, Kenny and Kustin conspired to accuse Plaintiff of diverting prescription drugs and narcotics for her own personal use. (Compl. ¶ 19.) Before leaving work that day, Plaintiff was stopped by Parker security guards and was searched. (Compl. ¶ 19.) However, no prescription drugs or narcotics were found on Plaintiff. (Compl. ¶ 19.)

Thereafter, Kenny and Seide arranged a meeting with Parker's human resources department and brought formal allegations of misconduct against Plaintiff. (Compl. ¶ 20.) Plaintiff was formally accused of diverting prescription drugs and narcotics and of making

numerous false entries in Parker's computer system to conceal her drug diversion. (Compl. ¶ 20.) In response to these allegations and in consultation with Parker senior management, Plaintiff resigned her position. (Compl. ¶ 20.) Plaintiff alleges that despite her resignation, Parker, along with Seide, Kenny and Kustin, made false allegations against her to the New York State Department of Education Office of Professional Discipline, which investigated Plaintiff but declined to bring professional disciplinary charges against her. (Compl. ¶ 21.)

Plaintiff commenced the within action on February 26, 2014, alleging a conspiracy to violate the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961(d), as well as a number of state law claims, including slander, libel, interference with business relations, intentional infliction of emotional distress and negligent infliction of emotional distress. Defendants now move to dismiss Plaintiff's Complaint in its entirety.

## DISCUSSION

### I.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when the "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). As a general rule, the court is required to accept as true all of the allegations contained in the complaint. See Iqbal, 129 S. Ct. at 1949; Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1949-50 (citation omitted); see also Twombly, 555 U.S. at 555 (stating that the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. Iqbal, 129 S. Ct. at 1950. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 555 U.S. at 557). Rather, only a complaint that "states a plausible claim for relief" will survive a motion to dismiss. Iqbal, 129 S. Ct. at 1950.

## II.  Civil RICO Conspiracy

The only federal claim contained in Plaintiff's Complaint alleges a violation of the RICO conspiracy statute. Specifically, Plaintiff alleges a violation of 18 U.S.C. § 1962(d), which makes it "unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c)" of the RICO statute. 18 U.S.C. § 1962(d). Proper pleading of a substantive RICO violation is required to sustain a RICO conspiracy claim. See First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 182 (2d Cir. 2004); Wild Edibles Inc. v. Industrial Workers of the World Loc. 460/640, No. 07 Civ. 9225, 2008 WL 4548392, at *3 (S.D.N.Y. Oct. 9, 2008). While Plaintiff's Complaint does not expressly contain a substantive RICO claim, Plaintiff makes various references to a conspiracy to violate subsection (c) of the RICO statute. Accordingly, the Court will consider Plaintiff's Complaint to contain a cause of action pursuant to 18 U.S.C. § 1962(c).

18 U.S.C. § 1962(c) makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). A violation of Section 1962(c) is properly pled by a showing of: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).

Here, Plaintiff's RICO claim is wholly devoid of merit. Plaintiff fails to properly plead either the existence of an enterprise or a pattern of racketeering activity, both of which are necessary to establish a violation of 18 U.S.C. § 1962. For the reasons set forth below, the allegations asserted in Plaintiffs' Complaint fail to rise to the level of a federal RICO claim.

1. Enterprise

A RICO enterprise is defined broadly and includes any "individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Such an enterprise need not be a formal corporation, group or organization. Instead, the statute is satisfied by a showing of a formal or informal group of persons, "associated for a common purpose of engaging in a course of conduct" which then functions as a "continuing unit." United States v. Turkette, 452 U.S. 576, 583 (1981); see also United States v. Morales, 185 F.3d 74, 80 (2d Cir. 1999). Defendants alleged to be members of the enterprise unit must "share a common purpose to engage in a particular fraudulent course of conduct" and work together to achieve their goal. First Capital, 385 F.3d 159 at 174.

-6-

In support of a claim that there exists a RICO enterprise, a plaintiff must also plead that each defendant participated in the "operation or management" of the enterprise. First Capital, 385 F.3d at 175-76. This requires a showing that each had "some part" in "directing the affairs of the enterprise." Reves v. Ernst & Young, 507 U.S. 170, 179 (1993). While each defendant need not have primary responsibility for the functioning of the enterprise, each must, at least, have some part in directing the affairs of the alleged unit. See DeFalco, 244 F.3d at 309. Additionally, a claim of a RICO enterprise must be supported by information "regarding the hierarchy, organization, and activities of the alleged enterprise," to support the allegation that the enterprise is a functioning unit. Continental Fin. Co. v. Ledwith, No. 08 Civ. 7272, 2009 WL 1748875, at *5 (S.D.N.Y. June 22, 2009) (citation omitted); see also Mikhlin v. HSBC, No. 08-CV-1302, 2009 WL 485667, at *3 (E.D.N.Y. Feb. 26, 2009).

While the standard for pleading an enterprise in this circuit is liberal, the court cannot conclude that Plaintiff's Complaint reaches even this low threshold. To sufficiently allege the existence of an enterprise under RICO, a plaintiff must plead "the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cedric Kushner Promotions, Inc. v. King, 533 U.S. 158, 161 (2001). "[B]y virtue of the distinctness requirement, a corporate entity may not be both the RICO person and the RICO enterprise under section 1962(c)." Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 244 (2d Cir. 1994). While a RICO enterprise may "consist of a corporate defendant associated with others to form an enterprise that is 'sufficiently distinct' from the corporate entity itself, the 'distinctness requirement may not be circumvented[]' by alleging a RICO enterprise that 'consists merely of a corporate defendant associated with its own

-7-

employees or agents carrying on the regular affairs of the defendant . . . ." R.C.M. Executive Gallery Corp. v. Rols Capital Co., 901 F. Supp. 630, 640 (S.D.N.Y. 1995) (quoting Riverwoods, 30 F.3d at 344) (additional citations omitted). "Because a corporation may only function through the actions of its employees and agents, a corporation's employees, together with the corporation, do not form an enterprise distinct from the corporation itself." Ferro v. Metro. Ctr. for Mental Health, No. 13 Civ. 2347, 2014 U.S. Dist. LEXIS 41477, at *12 (S.D.N.Y. Mar. 26, 2014) (citing Riverwoods, 30 F.3d at 344).

Plaintiff's Complaint alleges that Parker is an enterprise under RICO and that Defendants Seide, Kenny and Kustin conducted its affairs. (Compl. ¶ 25.) However, Parker is also named as a defendant herein. "[A]n assertion that a corporate defendant 'person' violated § 1962(c) fails where the plaintiff names the same corporate defendant as the 'enterprise." Palatkevich v. Choupak, Nos. 12 Civ. 1681, 12 Civ. 1682, 2014 U.S. Dist. LEXIS 10570, at *36 (S.D.N.Y. Jan. 24, 2014) (citing Bennett v. U.S. Trust Co. of New York, 770 F.2d 308, 315 (2d Cir. 1985). Plaintiff's failure to allege an enterprise distinct from the defendants under RICO is fatal to Plaintiff's RICO claim. See Palatkevich, 2014 U.S. Dist. LEXIS 10570, at *40 ("[C]ivil RICO claim against corporations who are sued as RICO 'persons' fail where the members of the alleged 'enterprise' include only the corporate defendant . . . and its employees or agents, and no other unrelated parties.").

2.  Pattern of Racketeering Activity

A "pattern of racketeering activity" requires a showing of at least two related predicate acts of racketeering activity occurring within a ten year period." 18 U.S.C. § 1961(5); see also First Capital, 385 F.3d at 178. Predicate acts of racketeering activity encompass a

variety of federal and state criminal offenses, including wire fraud and mail fraud, as alleged here. See 18 U.S.C. § 1961(1); see also 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud). While federal wire and mail fraud constitute RICO predicate acts, common law fraud under state law does not. See Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 242 (2d Cir. 1999).

"The mail and wire fraud statutes require a plaintiff to show that the defendant participated in a scheme to defraud victims of money or property, through the use of the mails or an interstate wire." Anctil v. Ally Fin., Inc., No. 12-CV-8572, 2014 U.S. Dist. LEXIS 16382, at *36 (S.D.N.Y. Feb. 10, 2014) (citing United States v. Walker, 191 F.3d 326, 334 (2d Cir. 1999)) (additional citation omitted). Where a civil RICO claim is predicated on acts of fraud, a plaintiff must comply with Federal Rule of Civil Procedure 9(b)'s requirement to plead with particularity. See Anctil, 2014 U.S. Dist. LEXIS 16382, at *36 (citing Moore v. PaineWebber, Inc., 189 F.3d 165, 172-73 (2d Cir. 1999)); see also Plount v. Am. Home Assurance Co., 668 F. Supp. 204, 206 (S.D.N.Y. 1987) ("[A]ll of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions."). "Allegations of predicate mail and wire fraud acts 'should state the contents of the communications, who was involved, . . . where and when they took place, and . . . explain why they were fraudulent.'" Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 185 (2d Cir. 2008) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993)).

Plaintiff's Complaint fails to plead either mail or wire fraud with the requisite particularity. First, the Complaint is silent with respect to the specific dates on which the alleged acts of mail and/or wire fraud occurred. Rather, Plaintiff simply states that she was employed by

Parker from November 28, 2011 to March 30, 2012 and that the acts of fraud occurred sometime within that time frame. (Compl. ¶ 8.) Second, Plaintiff fails to identify the specific mailings and or wirings alleged to be fraudulent. While Plaintiff asserts that Defendants engaged in a scheme to commit Medicare prescription billing fraud, she fails to explain how exactly such fraud occurred through the use of the mails or interstate wires. The only mailing or use of the wires that Plaintiff does specifically allege pertains to the transmission of Defendants' alleged defamatory statements against her to the New York State Department of Education Office of Professional Discipline, which cannot form the basis of a RICO claim. See Conte v. Newsday, Inc., 703 F. Supp. 2d 126, 138 (E.D.N.Y. 2010) (noting that "defamation does not provide a requisite predicate act for a RICO claim"). Nor does Plaintiff articulate who specifically made the fraudulent mailings and or wirings, instead lumping all Defendants together in the alleged scheme.

Based on the foregoing, the Court finds that Plaintiff's Complaint fails to adequately plead a substantive civil RICO violation. Since Plaintiff's Complaint fails to state a substantive RICO claim, it similarly fails to state a claim for RICO conspiracy. See First Capital, 385 F.3d at 182; Wild Edibles, 2008 WL 4548392, at *3. Accordingly, Plaintiff's RICO claim is dismissed.

III.   Standing

Defendants also contend that Plaintiff lacks standing to assert a RICO claim. In general, "RICO standing is a more rigorous matter than standing under Article III." Denney v. Deutsche Bank AG, 443 F.3d 253, 266 (2d Cir. 2006) (citing Lerner v. Fleet Bank, N.A., 318 F.3d 113, 123 (2d Cir. 2003)). "The RICO statute grants standing to '[a]ny person injured in his business

or property by reason of a violation of section 1962 . . . ." Lerner, 318 F.3d at 120 (quoting 18 U.S.C. § 1964(c)). "To demonstrate standing, a plaintiff must plead, at a minimum," (1) defendant's violation of § 1962; (2) cognizable injury to Plaintiff's business or property; and (3) causation. Lerner, 318 F.3d at 120. As set forth above, Plaintiff has not adequately pleaded the first element necessary to establish standing - a RICO violation. Accordingly, Plaintiff lacks standing to bring a RICO claim based on her failure to plead a RICO violation.

Even assuming arguendo that Plaintiff was able to sufficiently plead a RICO violation, both the second and third elements for RICO standing - injury and causation - are lacking here. With respect to the injury allegedly suffered by Plaintiff, the Complaint states that as a result of Defendants' pattern of racketeering activity, Plaintiff was "slandered, libeled, and defamed," and that Defendants' actions caused Plaintiff "immense pain and suffering." (Compl. ¶ 22.) The Complaint further alleges that although Plaintiff is "currently employed, she has been unable to seek employment that reflects her level of professional achievement and standing within her field, or to further her career due to the damage done to her reputation by defendants." (Compl. ¶ 22.) However, "generalized reputational harms," such as that alleged by Plaintiff, are not a cognizable injury under RICO. See Kimm v. Lee, 196 Fed. Appx. 14, 16 (2d Cir. 2006) (citing Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 23 (2d Cir. 1990)).

While Plaintiff argues that her injuries involve more than just damage to her reputation, she fails to cite to any specific injury to her business or her property. A RICO plaintiff only has standing "when his or her 'actual loss becomes clear and definite." Denney, 443 F.3d at 266 (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994) (additional citation omitted). Plaintiff has not quantified the loss she alleges to suffer, instead

simply that she has not been able to find employment reflective of her level of education and experience.[1] Such allegations are too speculative to constitute an injury to business or property. See Kimm, 196 Fed. Appx. at 16 (citing Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 23 (2d Cir. 1990)).

Finally, as to the third element necessary to confer RICO standing - causation - a plaintiff must demonstrate that "the defendant's alleged RICO violation was the 'but-for' or cause-in-fact of his injury" as well as "the legal or proximate cause." First Nationwide Bank, 27 F.3d at 769 (citing Holmes v. SIPC, 503 U.S. 258, 266 (1992)). "[P]roximate cause . . . requires 'some direct relation between the injury asserted and the injurious conduct alleged.' A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." Hemi Group, LLC v. City of New York, 559 U.S. 1, 9 (2010) (quoting Holmes, 503 U.S. at 268, 271, 274) (alteration in original).

Here, the alleged RICO violation is a conspiracy to commit Medicare fraud. Plaintiff alleges that in furtherance of that conspiracy, Defendants made false allegations against her to the New York State Department of Education Office of Professional Discipline, causing harm to her reputation and resulting in her inability to find employment commensurate with her education and experience. However, contrary to Plaintiff's arguments, the two events are not directly related. Any injury suffered as a result of Defendants' alleged RICO violation - defrauding Medicare - would be borne by the federal government and its taxpayers. The injury suffered by

---

[1] Although Plaintiff argues that the injuries she suffered "are much more in line with those damages other courts have recognized as proper due to plaintiffs' victimization by the criminal acts of conspirators in a scheme to defraud," (Pl. Mem. of Law in Opp'n 8), she fails to cite to a single Second Circuit case, whether by the Court of Appeals or by any district courts within the Circuit. Rather, Plaintiff cites a host of cases from the Fifth, Eighth and Ninth Circuits for support, none of which have any precedential value in this Court.

Plaintiff was not a direct result of the alleged scheme to defraud Medicare, but rather directly resulted from Defendants' allegations to the New York State Department of Education Office of Professional Discipline. "Acts that merely 'furthered, facilitated, permitted or concealed an injury which happened or could have happened independently of the act' do not directly cause that injury, and thus do not proximately cause it." Picard v. Kohn, 907 F. Supp. 2d 392, 397 (S.D.N.Y. 2012) (quoting DeSilva v. North Shore-Long Island Jewish Health Sys., Inc., 770 F. Supp. 2d 497, 524 (E.D.N.Y. 2011)) (additional citation omitted). The injury Plaintiff alleges to have suffered could have happened regardless of whether there was a conspiracy to commit Medicare fraud. As such, her injury was not proximately caused by the Defendants' alleged RICO violation. Accordingly, Plaintiff does not have standing to bring a RICO claim.

III.   Plaintiff's State Law Claims

With respect to Defendants' request that the Court dismiss Plaintiff's state law claims on their merits, that part of the motion is denied. However, having found that Plaintiff's federal claim fails as a matter of law, there is no longer any independent basis for federal jurisdiction in the within action. Although the Court has the discretion to exercise supplemental jurisdiction over plaintiff's remaining state law claims, see 28 U.S.C. § 1367(a), it declines to do so. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

Accordingly, Plaintiff's state law claims are dismissed without prejudice.[2]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. Specifically, Defendants' motion to dismiss the federal RICO claim is granted and that claim is dismissed with prejudice. With respect to that portion of Defendants' motion that seeks a dismissal of the state law claims on their merits, that application is denied. Rather, the Court declines to exercise supplemental jurisdiction over the remaining state law claims and those claims are accordingly dismissed without prejudice.

The Clerk of the Court is directed to enter judgment accordingly and to thereafter close the file in this action.

**SO ORDERED:**

Dated: Central Islip, New York
October 30, 2014

s/ Leonard D. Wexler
LEONARD D. WEXLER
United States District Judge

---

[2] "Since [New York's CPLR § 205] allow[s] a plaintiff to recommence a dismissed suit within six months without regard to the statute of limitations,' plaintiff[] will not be prejudiced by the dismissal of [her state law] claims." Tishman v. The Associated Press, No. 05 Civ. 4278, 2007 U.S. Dist. LEXIS 85588, at *29 (S.D.N.Y. Nov. 19, 2007) (quoting Trinidad v. N.Y City Dep't of Corr., 423 F. Supp. 2d 151, 169 (S.D.N.Y. 2006)) (alterations in original) (additional citations omitted).